UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHRISTOPHER D. JONES,<br><br>Plaintiff,<br><br>v.<br><br>POET TECHNOLOGIES INC., *et al.*,<br><br>Defendants. | Civ. No. 26-4717 (RK)(JBD)<br><br>**MEMORANDUM ORDER** |

Before the Court are three motions to appoint co-lead plaintiffs in this putative securities class action lawsuit. The first motion is by Young Kim; the second is by Jeremy Byrum; and the last is by Tan Yong. [Dkts. 5, 6, 7.] Byrum and Yong have stipulated to being appointed co-lead plaintiffs in this action. [Dkt. 9.] Byrum and Yong also have stipulated to the selection of their respective counsel, The Rosen Law Firm, P.A. ("Rosen") and Pomerantz LLP ("Pomerantz"), as co-lead counsel. *Id.* The Court has reviewed each motion and enters this non-dispositive order pursuant to 15 U.S.C. § 78u-4(a)(3)(B), Local Civil Rule 72.1, and 28 U.S.C. § 636. For the reasons set forth below, the Court appoints Byrum and Yong as co-lead plaintiffs, and Rosen and Pomerantz as co-lead counsel.

*

On April 28, 2026, plaintiff Christopher Jones brought a putative securities class action on behalf of all investors who purchased or otherwise acquired publicly traded POET Technologies Inc. ("POET" or the "Company") securities between April 1, 2026, and 8:57 AM ET on April 27, 2026, against POET and two of its

executives. The complaint sought monetary damages pursuant to §§ 10(b) and 20(a) of the Securities Exchange Act of 1934, as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), and Rule 10b-5, 17 C.F.R. § 240.10b-5. [Dkt. 1] at 1–4, 17–22.

In brief, the complaint alleges that defendants made materially false and misleading statements concerning (1) POET's potential status as a passive foreign investment company ("PFIC"),[1] and (2) a nondisclosure agreement that POET had entered into with another company. *Id.* at 6–10. According to the complaint, defendants concealed materially adverse facts that caused investors to purchase POET securities, knowing that these facts could result in material harm to the Company's valuation. *Id.* at 7. As a result, the complaint alleges that investors suffered losses after POET's stock fell 8.08% per share on April 14, 2026, and 47.3% per share on April 27, 2026. *Id.* at 11, 13.

After Jones filed the complaint on behalf of POET investors, three members of the putative class, Young Kim, Jeremy Byrum, and Tan Yong, filed competing motions to be appointed as lead plaintiff and to have their selected counsel

---

[1] A PFIC is an international corporation that meets one of two conditions: (1) "At least 75% of its gross income must be passive," or (2) "at least 50% of its assets must be investments that produce income in the form of earned interest, dividends, or capital gains." *What Is a Passive Foreign Investment Company (PFIC)?*, Investopedia (Aug. 7, 2026), https://www.investopedia.com/terms/p/pfic.asp. These corporations are "subject to strict and extremely complicated [Internal Revenue Service] tax guidelines." *Id.* United States investors with income deriving from PFICs must declare this income on a particular form. *Id.*

approved as lead counsel. [Dkts. 5, 6, 7.][2] Thereafter, Kim filed a notice indicating that he did not oppose the competing motions to serve as lead plaintiff, and specifically did not oppose Yong's motion, since Yong "claim[ed] the largest financial interest in the action." [Dkt. 8.] Byrum and Yong then filed a stipulation proposing to be appointed as co-lead plaintiffs, and to have their selected counsel approved as co-lead counsel. [Dkt. 9.]

*

The PSLRA directs courts to "appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). The statute creates a rebuttable presumption that the most adequate plaintiff is the person or group of persons that: (1) "has either filed the complaint or made a motion in response to a notice" advising members of the purported plaintiff class of the class action; (2) "has the largest financial interest in the relief sought by the class"; and (3) "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." *Id.* § 78u-4(a)(3)(B)(iii)(I).

The presumption may be rebutted by evidence that shows that the presumptively most adequate plaintiff (1) "will not fairly and adequately protect the interests of the class"; or (2) "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." *Id.* § 78u-4(a)(3)(B)(iii)(II).

---

[2] The Rosen firm filed the complaint on behalf of plaintiff Jones. That firm also represents movant Byrum.

*

As an initial matter, the PSLRA requires the plaintiff who files the initial action to publish a notice to the class within 20 days of filing the complaint informing class members of (1) the pendency of the action, (2) the claims asserted in the complaint, (3) the class period, and (4) their right to seek appointment as lead plaintiff. *Id.* § 78u-4(a)(3)(A)(i). Within 60 days of publishing that notice, any putative class member may move to serve as lead plaintiff.
*Id.* § 78u-4(a)(3)(A)(i)(II). This Court "has an independent duty to scrutinize the published notice and ensure that the notice comports with the objectives of the PSLRA, that is, encouraging the most adequate plaintiff, . . . to come forward and take control of the litigation." *Calif. Pub. Emps'. Ret. Sys. v. Chubb Corp.*, 127 F. Supp. 2d 572, 577 (D.N.J. 2001).

Here, in compliance with the PSLRA, the Rosen firm (counsel for plaintiff Jones and movant Byrum) published a detailed notice of this suit in *Business Wire* within 20 days of filing the complaint. The notice informed putative class members of the pendency of the action, the claims asserted against defendants, the class period, and their right to request to serve as lead plaintiff by filing a motion no later than June 29, 2026. [Dkts. 5-6, 6-4, 7-3.] Following the notice, all three movants timely filed their motion for appointment as lead plaintiff. [Dkts. 5, 6, 7.]

The Court is satisfied that adequate notice was provided pursuant to the statute. Accordingly, the Court next determines which movant is the presumptive lead plaintiff, and whether any member of the putative class has rebutted that

presumption. *In re Cendant Corp. Litig.*, 264 F.3d 201, 262 (3d Cir. 2001) (citing 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)–(II)).

*

The Court's analysis in identifying the presumptive lead plaintiff "begins with the identification of the movant with 'the largest financial interest in the relief sought by the class.'" *Id.* (quoting 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb)). In determining which movant has the largest financial interest, courts consider: "(1) the number of shares that the movant purchased during the putative class period; (2) the total net funds expended by the plaintiffs during the class period; and (3) the approximate losses suffered by the plaintiffs." *Id.* The third factor is afforded the greatest weight in identifying the presumptive lead plaintiff. *See Roby v. Ocean Power Techs., Inc.*, Civ. No. 14-3799 (FLW), 2015 WL 1334320, at *5 (D.N.J. March 17, 2015) (collecting cases).[3] Where, as here, parties seek to be appointed co-lead plaintiffs, a court will jointly calculate their totals to determine if they have the greatest aggregate financial loss. *See Larmay v. AMMO Inc.*, Civ. No. 24-2619 (DJH), 2025 WL 2399292, at *3 (D. Ariz. Aug. 19, 2025) (determining that

[3] Under the PSLRA, damages are calculated using the following formulas: (1) if the investor retained his or her shares, the difference between the purchase price paid for the shares and the average trading price of the shares during the 90-day period beginning on the date the information correcting the misstatement or omission was disseminated; or (2) if the investor sold his or her shares before the end of that 90-day period, the difference between the purchase price paid for the shares and the average trading price of the shares between the date when the misstatement was corrected and the date on which the investor sold the shares. 15 U.S.C. § 78u-4(e).

proposed co-lead plaintiffs were "the presumptively most adequate plaintiffs because they had the largest net loss"); *see also Dishion v. Power Sols. Int'l, Inc.*, Civ. No. 26-3149 (MFK), 2026 WL 2192216, at *1, *4 (N.D. Ill. July 30, 2026) (considering total losses of investor group, composed of three individual investors, in calculating losses to determine most adequate lead plaintiff).

In this case, the putative class period is from April 1, 2026, to 8:57 AM ET on April 27, 2026. According to his motion papers, Kim purchased 19,201 shares of POET stock during the putative class period at a total cost of $204,177.57. [Dkt. 5-5.] Kim asserts that he has suffered damages in the amount of $59,397.58 as a result of purchasing POET securities at artificially inflated prices. [Dkts. 5-2, 5-5.] According to his motion papers, Byrum purchased 690,707 shares of POET stock during the putative class period at a total cost of $7,784,325.49. [Dkt. 6-6.] Byrum asserts that he has suffered damages in the amount of $338,189.88 in connection with purchases of POET securities. [Dkts. 6-2, 6-6.] According to her motion papers, Yong purchased 153,100 shares of POET stock during the putative class period and expended $1,727,396 in net funds on POET common stock. [Dkts. 7-2, 7-3.] Yong asserts that she has suffered damages in the amount of $781,446 as a result of disclosures of defendants' alleged fraud. [Dkt. 7-2.] Together, Byrum and Yong's estimated damages from their motion papers total $1,119,635.88.

Having reviewed the movants' submissions, Byrum and Yong have the "largest financial interest" in the suit. They purchased the most shares during the

class period, expended the most money, and suffered the most alleged economic harm as calculated under the PSLRA. The PSLRA permits the appointment of multiple lead plaintiffs. 15 U.S.C. § 78u-4(a)(3)(B)(i) (directing courts to "appoint as lead plaintiff the member *or members* of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members" (emphasis added)). The Court next asks whether Byrum and Yong meet Rule 23's typicality and adequacy requirements.

*

After determining which movant has the largest financial interest, the Court proceeds with determining whether that movant has satisfied Federal Rule of Civil Procedure 23. This inquiry, however, is "confined to determining whether the movant has made a prima facie showing of typicality and adequacy." *Cendant*, 264 F.3d at 263. Moreover, at this stage of the litigation, this "requirement involves a preliminary showing that the proposed Lead Plaintiff's claims are typical of claims of the class members." *Calif. Pub. Emps'. Ret. Sys.*, 127 F. Supp. 2d at 579. In determining whether the movant with the largest financial interest satisfies typicality and adequacy, courts "consider the pleadings that have been filed, the movant's application, and any other information that the court requires to be submitted." *Cendant*, 264 F.3d at 264.

The Court applies traditional Rule 23 principles when determining whether the typicality and adequacy requirements have been satisfied. *Id.* at 264–65. Typicality is satisfied when the movant has "(1) suffered the same injuries as the

absent class members, (2) as a result of the same course of conduct by defendants, and (3) their claims are based on the same legal issues." *Blake Partners, Inc. v. Orbcomm, Inc.*, Civ. No. 07-4517 (WHW), 2008 WL 2277117, at *6 (D.N.J. June 2, 2008) (citing *Weiss v. York Hosp.*, 745 F.2d 786, 809 n.36 (3d Cir. 1984)). Adequacy is satisfied if "both the class representative and its attorney are capable of satisfying their obligations, and neither has interests conflicting with those of other Class members." *Smith v. Suprema Specialties, Inc.*, 206 F. Supp. 2d 627, 633 (D.N.J. 2002); *see also Cendant*, 264 F.3d at 265 (considering whether the movant has obtained adequate counsel as class counsel must be qualified and serve the interests of the entire class). When determining adequacy for lead plaintiff purposes, the analysis is "contingent upon both the existence of common interests between the proposed lead plaintiffs and the class, and a willingness on the part of the proposed lead plaintiff to vigorously prosecute the action." *In re Milestone Sci. Secs. Litig.*, 183 F.R.D. 404, 416 (D.N.J. 1998). When, as here, considering the appointment of co-lead plaintiffs, the court "shall appoint as lead plaintiff the member *or members* of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i) (emphasis added); *id.* § 78-4(a)(3)(B)(iii)(I) (explaining that "the court shall adopt a presumption that the most adequate plaintiff in any private action arising under this chapter is the person *or group of persons* that" fulfill the statutory requirements (emphasis added)).

Here, both Byrum and Yong have made a prima facie showing that they satisfy Rule 23(a)'s typicality requirement. Byrum's claims rest on the same legal theory as, and bear similar facts to, those of the members of the putative class. He alleges in his complaint that he purchased POET's securities at prices artificially inflated by the company's misstatements and omissions and, as a direct result, suffered economic damages. The same holds true for Yong. She purchased shares of POET common stock during the class period and, according to her complaint, she suffered significant losses and damages as a result of POET's acts and omissions. The proposed co-lead plaintiffs therefore satisfy typicality for lead plaintiff purposes.

Byrum and Yong also have made a prima facie showing that they satisfy Rule 23(a)'s adequacy requirement. Byrum filed a certification with his motion attesting that he is willing and able to serve as the putative class's representative, and will provide testimony at deposition and trial if necessary. The Court has before it no reason to believe that Byrum possesses any interests uncommon or antagonistic to the class. Further, considering his significant alleged financial loss, Byrum has a strong incentive to prosecute the case vigorously. Finally, having reviewed Byrum's selected counsel's qualifications and as discussed below, the Court is satisfied that the Rosen firm is experienced and fully capable of satisfying its obligations to serve the interests of the putative class.

Likewise, Yong included with her motion a certification stating that she is willing and able to serve as class representative and will provide deposition and

trial testimony if necessary. She also included with her motion a declaration in which she expressed her strong motivation to recover not just her own significant financial losses as a result of POET's alleged violations of federal laws, but also those losses suffered by the class members. Her declaration further states she is committed to litigating this case zealously on behalf of the putative class.
The Court is unaware of any reason to believe that Yong possesses any interests uncommon or antagonistic to the class. And Yong allegedly suffered the greatest financial loss of any individual seeking to represent the class, giving her a strong incentive to prosecute the case vigorously. Finally, having reviewed Yong's selected counsel's qualifications and as discussed below, the Court is satisfied that Pomerantz is experienced and fully capable of satisfying its obligations to serve the interests of the putative class.

The Court is therefore satisfied that Byrum and Yong have satisfied the adequacy and typicality requirements of Rule 23 and, because they have the "largest financial interest" in the litigation, they are entitled to the presumption of being the "most adequate" co-lead plaintiffs.

*

"Once a presumptive lead plaintiff is located, the court should then turn to the question whether the presumption has been rebutted." *Cendant*, 264 F.3d at 268. The presumption may be overcome "by a member of the purported plaintiff class" by demonstrating that Byrum and Yong "will not fairly and adequately protect the interests of the class," or are "subject to unique defenses that render

[them] incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

If there are no challenges by other putative class members to the appointment of Byrum and Yong as co-lead plaintiffs, then their presumption as the most adequate plaintiffs stands. *See, e.g.*, *Arbitrage Fund v. Toronto-Dominion Bank*, Civ. No. 23-2763 (RBK), 2023 WL 5550198, at *5 (D.N.J. Aug. 29, 2023) (finding that presumption of adequacy must stand where no challenges to the presumption were made); *In re Party City Secs. Litig.*, 189 F.R.D. 91, 112 (D.N.J. 1999) ("Absent such a challenge, the presumption of adequacy will generally survive.").

Here, Kim does not oppose any of the competing motions for appointment as lead plaintiff, [Dkt. 8], and no other challenges to the appointment of Bynum or Yong have been submitted. Therefore, the presumption stands as to Byrum and Yong.

*

Under the PSLRA, "[t]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v). In evaluating the selected counsel, this Court considers: (1) "the quantum of legal experience and sophistication possessed by the lead plaintiff"; (2) "the manner in which the lead plaintiff chose what law firms to consider"; (3) "the process by which the lead plaintiff selected its final choice"; (4) "the qualifications and experience of counsel selected by the lead plaintiff"; and

(5) "the evidence that the retainer agreement negotiated by the lead plaintiff was (or was not) the product of serious negotiations between the lead plaintiff and the prospective lead counsel." *Cendant*, 264 F.3d at 276. But "the ultimate inquiry is always whether the lead plaintiff's choices were the result of a good faith selection and negotiation process and were arrived at via meaningful arms-length bargaining." *Id.* Absent this process, "it is the court's obligation to disapprove the lead plaintiff's choices." *Id.*

Byrum selected The Rosen Law Firm, P.A. as his choice for lead counsel. Rosen has extensive experience in securities class action litigation; the firm has served or is currently serving as lead counsel or co-lead counsel in a number of securities class action litigations, including several in this district. [Dkt. 6-7.] Byrum signed a retainer agreement with Rosen to serve as counsel on his behalf, [Dkt. 6-5], and the Court has no reason to believe that this retainer agreement did not follow "a good faith selection and negotiation process" that was "arrived at via meaningful arms-length bargaining." *Cendant*, 264 F.3d at 276.

Likewise, Yong selected Pomerantz LLP as her choice for lead counsel. Pomerantz also has an impressive history of representing parties in securities class action litigation. [Dkt. 7-3.] Yong stated in her declaration that she spoke with an attorney at Pomerantz and approved the filing of her motion to serve as lead plaintiff. *Id.* Again, the Court possesses no information suggesting to it that Yong's decision to retain Pomerantz did not result from "a good faith selection and negotiation process" that was "arrived at via meaningful arms-length bargaining."

*Cendant*, 264 F.3d at 276. The Court therefore approves Byrum and Yong's selection of Rosen and Pomerantz to serve as co-lead counsel.

*

For the reasons stated and good cause appearing,

**IT IS** on this **30th** day of **September, 2026**,

**ORDERED** that Byrum and Yong's motions to appoint lead plaintiff [Dkts. 6, 7] are **GRANTED** and Kim's motion to appoint lead plaintiff [Dkt. 5] is **DENIED**; and it is further

**ORDERED** that Byrum and Yong are **APPOINTED** co-lead plaintiffs to represent all putative classes and sub-classes of plaintiffs in this action pending and through a decision on class certification; and it is further

**ORDERED** that The Rosen Law Firm, P.A. and Pomerantz LLP are **APPOINTED** co-lead class counsel to represent the co-lead plaintiffs and all putative classes and sub-classes of plaintiffs in this action pending and through a decision on class certification; and it is further

**ORDERED** that, pursuant to the stipulation and order entered on August 13, 2026, *see* [Dkt. 16], within 60 days of the date of this Order, co-lead plaintiffs shall be permitted to file a consolidated amended complaint, or designate the existing initial complaint as the operative complaint. The parties shall thereafter proceed pursuant to paragraphs 3 through 7 of the August 13, 2026 stipulation and order.

J. BRENDAN DAY
UNITED STATES MAGISTRATE JUDGE